NATHAN SPIRO, Respondent, v. JOAN D. SPIRO, Appellant.—

No opinion. Rabin, Acting P. J., Latham and Brennan, JJ., concur; Martuscello and Kleinfeld, JJ., dissent and vote to reverse the judgment, to dismiss the complaint, and to remit the counterclaim to the trial court for trial, with the following memorandum: Plaintiff pleaded three causes of action for annulment. The first was based on defendant's alleged physical incapacity to engage in sexual relations, the second on her alleged concealment of physical illness which rendered her incapable of copulation, and the third on her alleged fraudulent misrepresentation that she intended to consummate the marriage and her failure to do so. Special Term granted plaintiff an annulment on the third cause of action, finding that at the time of the marriage defendant had no intention of consummating the marriage and that she did not consummate it. The parties were married on October 26, 1965. Plaintiff was a 54-year-old door-to-door salesman and this was his third marital venture. Defendant was 33 years old and had been previously married. She had a 15-year-old daughter from her prior marriage. According to plaintiff, he lived with his wife until October 30, 1965, when he left her because from the date of the marriage she had refused to have sexual relations with him. Around November 18, 1965, he had all his furniture removed from the marital

apartment. On cross-examination he stated that, in discussing the sexual problem with his wife several days after the marriage, she stated she needed an operation and that if he would pay for it she would undergo it and be able to have sexual relations. A Dr. Kortlucke testified on behalf of plaintiff that a Kings 'County Hospital record which had been received in evidence revealed that in April, 1965 defendant had a vaginal condition. However, the doctor could not say with any degree of medical certainty that she could not have had sexual intercourse with plaintiff in October, 1965. Plaintiff called three housewives to testify on his behalf. The first, Mrs. Beach, had met defendant only once prior to her marriage to plaintiff. Mrs. Beach testified that at the urging of plaintiff she called defendant and arranged a luncheon date at a cafeteria on Kings Highway in Brooklyn to discuss defendant's marital problems. They met there on October 30. Also present were a Mrs. Siegel and a Mrs. Le Blanc, neither of whom had ever met defendant before. Mrs. Beach was indebted to plaintiff for merchandise she had bought from him and she also served the summons and complaint in the instant action upon defendant. According to her, defendant said she needed an operation before she and her husband could live as man and wife. Defendant indicated that she was willing to undergo such an operation. Mrs. Siegel and Mrs. Le Blanc corroborated this testimony. Defendant denied the marriage had not been consummated and that she had any condition preventing her from having intercourse. She denied meeting the aforementioned witnesses at the cafeteria or speaking to them about her marital problems. She testified that she and her husband had intercourse on their wedding night. She further stated that she and plaintiff had been going together socially since 1953 and that they had had sexual intercourse in his apartment prior to their marriage. Her first husband had been in and out of prisons and she claimed that plaintiff had been more of a father to her child than her first husband had been. Plaintiff promised her that if she would marry him he would provide her and her child with the better things in life. Plaintiff paid for a Mexican divorce which she secured while her former husband was in prison. With respect to the breakup of the marriage to plaintiff, defendant stated that three or four days after they were married plaintiff told her he had made a mistake in marrying her and that she was to leave the marital apartment, which had originally been his. Upon her refusal to do so, plaintiff assaulted her and thereafter removed his furniture. In November, 1965, she instituted a proceeding in the Family Court for support and thereupon plaintiff instituted the present action for annulment. As a general rule, the evidence in support of an annulment must be such as to constitute proof of a clear, definite, credible, convincing and satisfactory character in respect of every factor required to make out a situation calling for such relief (*Gabriel* v. *Gabriel,* 274 App. Div. 141, 143). In our opinion, the evidence with respect to the fraud claimed by plaintiff falls far short of the quantum and quality of proof required for annulment of a marriage on the ground of fraud. The record wholly fails to support a finding of a present intention on the part of defendant at the time of the marriage not to have sexual relations with plaintiff. Even assuming plaintiff's evidence to be true, it establishes, at best, refusal of defendant to have relations with plaintiff for a period of four days at a time when she claims she required an operation in order to be able to have relations and when she was willing to have the operation performed. In our opinion, these facts negate any inference of an intention on defendant's part not to fulfill her role as a wife.